## CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
|---|---|---|---|
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     (IN CHAMBERS) - DEFENDANT SCAN HEALTH PLAN'S
MOTION TO DISMISS CASE (Dkt. 12, filed August 21, 2017)

DEFENDANT YORK HEALTHCARE & WELLNESS CENTRE,
LP'S PARTIAL MOTION TO DISMISS (Dkt. 17, filed August 31,
2017)

DEFENDANT S REGAL MEDICAL GROUP, INC. AND
LAKESIDE COMMUNITY HEALTHCARE INC.'S  MOTION TO
DISMISS (Dkt. 22, filed September 19, 2017)

DEFENDANT ROYAL PLAMS POST ACUTE, LLC'S MOTION
TO DISMISS (Dkt. 23, filed September 19, 2017)

## I.    INTRODUCTION

On June 20, 2017, plaintiff Bernard Inchauspe ("plaintiff") filed this action in the
Los Angeles County Superior Court against defendants SCAN Health Plan ("SCAN"),
Lakeside Community Healthcare, Inc. ("Lakeside"), Regal Medical Group, Inc.
("Regal"), Royal Palm Post Acute, LLC ("Royal Palm"), and York Healthcare &
Wellness Centre, LP ("York").  Dkt. 1-2 ("Compl.").  Plaintiff asserts seven claims
against defendants: (1) tortious breach of the implied covenant of good faith and fair
dealing, (2) breach of contract, (3) financial elder abuse, (4) negligence, (5) professional
negligence, (6) intentional infliction of emotional distress, and (7) negligent infliction of
emotional distress.  Id.  The gravamen of plaintiff's complaint is that after receiving
inpatient treatment for a stroke, he was improperly denied acute rehabilitation services
and received substandard care at two skilled nursing facilities ("SNF"), causing plaintiff
both physical injuries and severe emotional distress.  On August 14, 2017, SCAN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

removed the action to this Court pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Dkt. 1-1.

On August 21, 2017, SCAN filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on plaintiff's failure to exhaust Medicare's administrative appeals process and pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that plaintiff's claims are preempted by the Medicare Act. Dkt. 12 ("SCAN MTD"). On September 22, 2017, plaintiff filed an opposition, dkt. 25 ("SCAN Opp'n"); and SCAN filed a reply on October 30, 2017, dkt. 38 ("SCAN Reply").

On August 31, 2017, York filed a partial motion to dismiss plaintiff's elder abuse claim and prayer for punitive damages pursuant to Rule 12(b)(6). Dkt. 17 ("York MTD"). On September 22, 2017, plaintiff filed an opposition, dkt. 26 ("York Opp'n"); and York filed a reply on September 29, 2017, dkt. 31 ("York Reply").

On September 19, 2017, Regal and Lakeside filed a joint motion to dismiss on the same grounds asserted by SCAN and moved to dismiss plaintiff's financial elder abuse and claim and prayer for punitive damages pursuant to Rule 12(b)(6). Dkt. 22 ("R/L MTD"). On September 29, 2017, plaintiff filed an opposition, dkt. 32 ("R/L Opp'n"); and Regal and Lakeside filed a reply on October 30, 2017, dkt. 34 ("R/L Reply").

On September 19, 2017, Royal Palms filed a Rule 12(b)(6) motion to dismiss plaintiff's claims for financial elder abuse and professional negligence in addition to his prayer for punitive damages. Dkt. 23 ("RP MTD"). On October 23, 2017, plaintiff filed an opposition, dkt. 33 ("RP Opp'n"); and Royal Palms filed a reply on October 30, 2017, dkt. 35 ("RP Reply").

These motions were scheduled to be heard on November 13, 2017, but the hearing was vacated due to unforeseen circumstances. Pursuant to the Court's request, SCAN filed a supplemental memorandum regarding the application of the federal officer removal statute on November 20, 2017, and the matter was thereafter taken under submission. Having carefully considered the parties' arguments, the Court finds and concludes as follows.

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

## II.    BACKGROUND

### A.    Factual Allegations

SCAN is a Health Maintenance Organization ("HMO") that offers Medicare Advantage ("MA") plans.  Compl. ¶¶ 4, 22.  Plaintiff, a senior citizen and Medicare beneficiary, is enrolled in SCAN's "Classic HMO" plan (the "Plan").  Id. ¶ 22. Plaintiff's Medicare benefits are provided pursuant to the terms of SCAN's Evidence of Coverage ("EOC"), which covers medically necessary treatment and services.  Id. ¶¶ 23–24.  SCAN contracts with independent physician associations ("IPAs") to deliver these benefits to its subscribers.  Defendants Regal and Lakeside (collectively, the "Medical Group") are plaintiff's IPAs under the Plan.  Id. ¶ 8.

Plaintiff suffered a stroke on February 1, 2017.  Id. ¶¶ 25–26.  He was initially examined in the emergency room at Glendale Memorial Hospital, and then transferred to the Intensive Care Unit ("ICU") at Good Samaritan Hospital, which specializes in treating stroke victims.  Id.  ¶¶ 26–27.  On February 7, 2017, plaintiff was transferred from the ICU to an observation unit at Good Samaritan.  Plaintiff was consulted by Dr. Francis Te, who informed plaintiff that since he is a SCAN policy holder, SCAN and the Medical Group should have assigned Dr. Te as plaintiff's internist when he was admitted at Good Samaritan.  Id. ¶ 32.  Dr. Te ordered acute rehabilitation for plaintiff following his discharge from Good Samaritan.  Id. ¶ 34.

On February 8, 2017, plaintiff's daughter, Stella, received a call from the Medical Group's case manager, "Ritzy."  Id.  Ritzy informed Stella that despite Dr. Te's order, she did not believe that plaintiff was ready for acute rehabilitation and only authorized placement in a SNF.  Id.  On February 9, 2017, plaintiff was discharged from Good Samaritan to Royal Palms nursing facility.  Id. ¶ 37.  Upon arrival, plaintiff's family noticed that no hospital administration or staff were present in the lobby and that patients were walking around aimlessly.  Id.  Plaintiff's family found him in a "dark, run-down, dreary, and dirty room."  Plaintiff was lying on a bed with no side rails to protect him from falling.  Id. ¶ 40.  Stella was unable to reach Ritzy and was directed to an on-call manager, who informed Stella that Ritzy should have had her schedule a visit to Royal Palms before having plaintiff admitted there.  Id. ¶¶ 41–42.  The on-call manager informed Stella that there was nothing she could do to transfer plaintiff because it was "after hours."  Id. ¶ 47.  Ultimately, Stella arranged for plaintiff's transportation home for the night.  Id. ¶ 50.

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

The following day, Stella worked to get her father admitted to another facility. Id. ¶ 51. The Medical Group contacted Stella to inform her that there was an opening at York's facility. Id. ¶ 55. Stella consulted with the admitting director of the facility, who told her that her father would get the best possible care for his HMO insurance, that they had an on-site doctor Monday through Friday, and that plaintiff could receive one hour of physical therapy and one hour or occupational therapy six days a week. Id. ¶ 56. The admitting director also told Stella that plaintiff would be evaluated by both a physical and occupational therapist the day after plaintiff's admittance. Id. Stella admitted plaintiff to York and he was transferred on February 10, 2017. Id. ¶¶ 57–58.

On February 11, 2017, Stella followed up with York's physical therapy department as to when her father would be evaluated. Id. The department scheduled the evaluation for later that afternoon. Id. ¶ 60. As scheduled, an occupational therapist arrived to evaluate plaintiff, and advised plaintiff that he should receive up to two hours of therapy a day—one hour of physical therapy and one hour of occupational therapy—six days a week. Id. ¶ 61. No physical therapist arrived that day to evaluate plaintiff. Id. On February 12, 2017, the third day of his stay at York, plaintiff still had not received any therapy. Id. ¶ 62. On the morning of February 15, 2017, Stella was informed that plaintiff's insurance only provided 30 minutes of physical therapy, 30 minutes of occupational therapy, and 15 to 20 minutes of speech therapy per day. Id. This information was contrary to plaintiff's EOC and to what plaintiff was previously told before admittance at York. Id. ¶ 66.

Plaintiff's physical and emotional state continued to deteriorate at York. Id. ¶ 67. Stella complained to the Medical Group about the poor care her father was receiving. Id. ¶ 68. Plaintiff's case manager never advised Stella of her rights to appeal, or the Plan's relevant provisions governing plaintiff's rights to receive medically necessary care. Id. On February 16, 2017, plaintiff was examined by a neurologist, Dr. Lance Lee, who stated that plaintiff's left side had been neglected, and advised that plaintiff was ready for acute rehabilitation. Id. ¶ 69.

On February 20, 2017, York placed plaintiff in a wheelchair and left him unattended. As a result, he fell out of the wheelchair and was later found on the floor. Id. ¶ 73. That day, Stella coordinated plaintiff's transfer to Casa Colina, an acute rehabilitation facility. Id. ¶ 74. However, a representative from the Medical Group informed Stella that the discharge transfer from York to Casa Colina was not something that the Medical Group would authorize, stating "this is how it is with HMOs." The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| --- | --- | --- | --- |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

representative later returned with an "Against Medical Advice" form. Id. Stella signed the form and Plaintiff was transferred Casa Colina on February 20, 2017. Id. ¶¶ 75–76. Plaintiff was discharged from Cosa Colina on March 13, 2017. During his three weeks at Casa Colina's acute rehabilitation program, plaintiff's condition improved. Id. ¶ 77.

## B.  Statutory and Regulatory Background

The Medicare Act, 42 U.S.C. §§ 1395 et seq. ("Medicare" or the "Act"), is a federally subsidized health insurance program for elderly and disabled persons administered by the Secretary of the Department of Health and Human Services (the "Secretary"), through the Center for Medicare and Medicaid Services ("CMS"). The Act consists of four main parts. Parts A and B govern the traditional fee-for-service Medicare program administered by CMS. Part A covers the cost of hospitalization and related expenses. See 42 U.S.C. §§ 1395c to 1395i–5. Part B is a supplemental insurance program that covers the cost of professional medical services, treatment, and equipment. See 42 U.S.C. §§ 1395–j to 1395–w. Part C, relevant here, outlines the MA program, wherein Medicare beneficiaries may elect to receive their benefits through HMO plans or other managed care arrangements administered by private, MA organizations ("MAOs") such as SCAN under contract with CMS. See 42 U.S.C. §§ 1395w–21, 27. Part D is a voluntary prescription drug benefit program for seniors. See 42 U.S.C. § 1395w–101.

Medicare coverage determinations by MAOs are made pursuant to criteria established by the CMS. Medicare generally precludes coverage for items or services that "are not reasonable and necessary for the diagnosis or treatment of illness or injury." 42 U.S.C. § 1395y(a)(1)(A). Pursuant to CMS regulations, inpatient rehabilitation services are not a Medicare-covered benefit unless the beneficiary's condition meets the following five requirements: (1) the condition requires active and ongoing therapeutic intervention of multiple therapy disciples, at least one of which must be physical therapy or occupational therapy; (2) the condition requires an intensive rehabilitation therapy program; (3) the beneficiary may reasonably be expected to actively participate in, and benefit significantly from, the intensive rehabilitation therapy program; (4) the condition requires physician supervision by a rehabilitation physician, with face-to-face visits at least three days per week to assess the patient both medically and functionally and to modify the course of treatment as needed; and (5) the condition requires an intensive and coordinated interdisciplinary team to the deliver the rehabilitative care. 42 C.F.R. § 412.622(a)(3).

| | CIVIL MINUTES – GENERAL | | ‘O’ |
|---|---|---|---|
| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

If an enrollee in an MA plan is dissatisfied with the MAO's coverage determination, the enrollee must present a claim through the designated appeals process and exhaust available administrative remedies. See 42 U.S.C. §§ 1395u(b)(3)(C), 1395ff(b) (incorporating by reference 42 U.S.C. §405(b)); see also, 42 C.F.R. §§ 422.582 et seq. (describing the administrative appeals process for Medicare Part C). Once this administrative process is exhausted, judicial review of the "final decision" of the Secretary is available as provided in 42 U.S.C. § 405(g).

## III. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| --- | --- | --- | --- |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

## IV.   DISCUSSION

Although plaintiff did not file a motion to remand, the Court has "a duty to establish subject matter jurisdiction over the removed action *sua sponte*, whether the parties raised the issue or not." United Investors Life Ins. Co. v. Waddell & Reed, Inc., 360 F.3d 960, 967 (9th Cir. 2004).  Accordingly, the Court first addresses whether this action was properly removed by SCAN before addressing defendants' motions to dismiss.

### A.   FEDERAL OFFICER REMOVAL

SCAN removed this action pursuant to the federal officer removal statute, which permits removal of any civil action against "any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office."  28 U.S.C. § 1442(a)(1). The purpose of the statute is "to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties." Goncalves v. Rady Children's Hosp. San Diego, 865 F.3d 1237, 1244 (9th Cir. 2017) (quotation marks and citation omitted).  To invoke § 1442(a)(1), a defendant must show that (1) it is a "person" within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions defendant took pursuant to a federal officer's direction, and (3) defendant has a "colorable" federal defense to plaintiffs' claims. Leite v. Crane Co., 749 F.3d 1117, 1120 (9th Cir. 2014).  SCAN clearly satisfies the first and third requirements.  SCAN is a corporation, which is considered a "person" for purposes of § 1442(a)(1). Goncalves, 865 F.3d at 1244.  SCAN also raises two "colorable" federal defenses based on the Medicare Act: failure to exhaust administrative review procedures and preemption.  The second requirement turns on whether SCAN was "acting under" CMS within the meaning of § 1442(a)(1) when it denied plaintiff acute rehabilitation services and provided substandard care at two SNFs.

The Supreme Court has noted that "acting under" is a broad phrase that must be "liberally construed." Watson v. Philip Morris Cos., 551 U.S. 142, 147 (2007).  For a private entity to be "acting under" a federal officer, the private entity must be involved in "an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Id. at 152.  The "relationship typically involves subjection, guidance, or control," but it must go beyond simply complying with the law, even if the laws are "highly detailed" and thus leave the entity "highly regulated." Id. at 151–53 (internal quotation marks and citation

| | CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|---|
| Case No. | 2:17-cv-06011-CAS (JCx) | | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | | |

omitted). Thus, "[t]he assistance that private contractors provide federal officers [must go] beyond simple compliance with the law and help[ ] officers fulfill other basic governmental tasks." Id. at 153. The Court noted that lower courts have held that government contractors fall within the terms of § 1442(a)(1) when the relationship is "an unusually close one involving detailed regulation, monitoring, and supervision." Id. (citing Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387 (5th Cir. 1998) (chemical company producing Agent Orange for the military pursuant to detailed specifications and under close supervision acted under a federal officer)).

The Court agrees with the majority of district courts which have held that MAOs administering Part C benefits fall within the category of highly regulated private contractors described in Watson and thus are "acting under" CMS in a manner that entitles them to removal under § 1442(a)(1). See Body & Mind Acupuncture v. Humana Health Plan, Inc., No. 1:16CV211, 2017 WL 653270, at *5 (N.D. W.Va. Feb. 16, 2017) (collecting cases). By administering Medicare benefits through the private market, SCAN helps CMS "fulfill [a] basic governmental task." Watson, 551 U.S. at 153. Absent MA organizations such as SCAN, CMS would be obligated to administer Medicare benefits through Parts A and B to those individuals who currently elect Part C coverage. Thus, SCAN's activities "involve an effort to *assist*, or to help *carry out*, the duties or tasks of" CMS in a manner much more significant than "simply complying with the law." Id. In addition, SCAN's benefits determinations and quality of care are subject to detailed regulations and administrative review by CMS, indicating that their relationship is "an unusually close one involving detailed regulation, monitoring, and supervision." Id. In light of the Supreme Court's guidance that the federal officer removal statute must be "liberally construed," the Court finds that SCAN was "acting under" CMS when it engaged in the actions that are the subject of plaintiff's complaint.[1] Accordingly, removal was proper under § 1442(a)(1).

---

[1] In an unpublished opinion, the Sixth Circuit adopted a contrary view, finding that "the relationship between CMS and MAOs is not so unusually close that [an MAO] may wield the officer-removal statute." Ohio State Chiropractic Association v. Humana Health Plan Inc., 647 Fed. Appx. 619, 621–23 (6th Cir. 2016). The Court declines to follow the Sixth Circuit in light of the Supreme Court's guidance in Watson that the term "acting under" should be given a liberal construction. 551 U.S. at 147.

CIVIL MINUTES – GENERAL       'O'

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
|----------|--------------------------|------|------------------|
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

## B.    SCAN'S MOTION TO DISMISS

Plaintiff asserts the following claims against SCAN: (1) tortious breach of the implied covenant of good faith and fair dealing; (2) breach of contract; (3) financial elder abuse; (4) intentional infliction of emotional distress; and (5) negligent infliction of emotional distress. SCAN moves to dismiss these claims on two related grounds. First, SCAN contends that plaintiff's bad faith, breach of contract, and emotional distress claims "arise under" the Medicare Act and therefore should be dismissed pursuant to Rule 12(b)(1) for failure to exhaust the Act's mandatory administrative review procedures. Second, SCAN argues that all of plaintiff's claims should be dismissed pursuant to Rule 12(b)(6) because they are expressly preempted by 42 U.S.C. § 1395w–26(b)(3).

### 1.     Administrative Exhaustion

The Medicare Act's exhaustion requirement, 42 U.S.C. § 405(h), makes judicial review under a related provision, 42 U.S.C. § 405(g), "the sole avenue for judicial review" for claims "'arising under' the Medicare Act." Heckler v. Ringer, 466 U.S. 602, 614–15 (1984). In Ringer, the Supreme Court held that claim "arises under" the Medicare Act and is therefore subject to this exhaustion requirement (1) where the "standing and the substantive basis for the presentation of the claims" is the Medicare Act; or (2) where the claims are "inextricably intertwined" with a claim for Medicare benefits. Id. In that case, plaintiffs were four Medicare beneficiaries who suffered from respiratory distress; three had had surgery known as bilateral carotid body resection and were seeking reimbursement, and one requested the surgery but claimed he could not afford it absent Medicare coverage. Id. at 605. The Supreme Court held that, at bottom, the plaintiffs sought Medicare reimbursement or authorization for a particular surgical procedure, and therefore the claim was one in which both the standing and the substantive basis of the claim was the Act. Id. at 614, 624. However, the Court noted that exhaustion may not be appropriate where a plaintiff's claim is "wholly 'collateral'" to a claim for benefits and his "injury could not be remedied by the retroactive payment of benefits after exhaustion of his administrative remedies." Id.

In Ardary v. Aetna Health Plans of California, Inc., 98 F.3d 496 (9th Cir. 1996), the Ninth Circuit recognized that state law claims for damages arising from tortious conduct committed by a Medicare provider may not "arise under" the Act. In that case, a Medicare beneficiary who lived in a rural area and was enrolled in an HMO suffered a

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

heart attack and was refused airlift transportation to a more sophisticated medical facility than those available nearby. Id. at 500. When the beneficiary died, her family sued the HMO and its contractor in state court for negligence, intentional and negligent infliction of emotional distress, misrepresentation, and professional negligence. Id. at 498. The defendants removed to federal court and sought dismissal, arguing that all of the plaintiffs' state law claims were related to the denial of Medicare benefits and were therefore preempted. Id. Even though the plaintiffs conceded their claims were "predicated on" the HMO's failure to authorize the airlift, the Ninth Circuit held that the plaintiffs' claims were not "inextricably intertwined" with the denial of Medicare benefits because the plaintiffs were "at bottom not seeking to recover benefits" and their injuries could not be "remedied by the retroactive authorization or payment." Id. at 500–01.

Similarly, the California Supreme Court in McCall v. PacifiCare of California, Inc., 25 Cal.4th 412 (2001) held that a plaintiff's state law claims against an HMO arising out of its refusal to provide Medicare services were not subject to the Act's exhaustion requirement. Id. at 415. In that case, a Medicare beneficiary suffering from progressive lung disease, along with his wife, sued his HMO alleging claims for negligence, willful misconduct, fraud, and infliction of emotional distress. Id. The plaintiffs claimed the beneficiary was forced to disenroll from the plan because it refused to authorize his referral to a specialist for a lung transplant. Id. The court held "[t]he 'inextricably intertwined' language in *Ringer* is more correctly read as sweeping within the administrative review process only those claims that, 'at bottom,' seek reimbursement or payment for medical services, but not a claim" that "incidentally refers to a denial of benefits under the Medicare Act." Id. at 425. The court concluded that because the plaintiffs "may be able to prove the elements of some or all of their causes of action without regard, or only incidentally, to Medicare coverage determinations, because . . . none of their causes of action seeks, at bottom, payment or reimbursement of a Medicare claim or falls within the Medicare administrative review process, and because the harm they allegedly suffered thus is not remediable within that process, it follows" the their claims were not subject to the Act's exhaustion requirement. Id. at 426.

The Ninth Circuit most recently addressed the exhaustion requirement in Do Sung Uhm v. Humana, Inc., 620 F.3d 1134 (9th Cir. 2010). In that case, the plaintiffs enrolled in and paid their monthly premiums but did not receive prescription drug benefits under Part D. Instead, they were forced to pay out-of-pocket for two months of prescription drugs. Id. at 1138-39. The plaintiffs filed a class action, claiming breach of contract, fraud, unjust enrichment, and violation of state consumer protection laws. Id. at 1139.

CIVIL MINUTES – GENERAL          'O'

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
|---|---|---|---|
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

The court noted that one category of claims that "arise under" the Act are "cleverly concealed claims for benefits" and that whether or not plaintiffs seek reimbursement of benefits or damages is not "strongly probative" of whether a claim "arises under" the Act. Id. at 1141–42 (quoting Kaiser v. Blue Cross of Cal., 347 F.3d 1107, 1112 (9th Cir. 2003) (holding that Medicare provider's claims against a state's fiscal intermediary for unreimbursed services must be administratively exhausted)).  The court concluded that, "where, at bottom, a plaintiff is complaining about the denial of Medicare benefits—here, drug benefits under Part D—the claim 'arises under' the Medicare Act." Id. at 1142–43. With respect to the plaintiffs' breach of contract and unjust enrichment claims, the court found that they were "merely creatively disguised claims for benefits" and plaintiffs did not "allege any injury that could not be remedied through the retroactive payment of Medicare drug benefits." Id. at 1143–44.  Accordingly, the court held that these claims arose under the Act and were subject to the administrative exhaustion requirement.  Id. at 1144.  The court went on to hold that while the plaintiff's fraud and consumer protection claims were not subject to the exhaustion requirement, the claims were nevertheless expressly preempted.  Id. at 1145–57.

SCAN argues that plaintiff's bad faith, breach of contract, and emotional distress claims are all based on SCAN's determination that acute rehabilitation services were not a Medicare-covered benefit, and therefore plaintiff's claims are "at bottom, merely creatively disguised claims for benefits."  SCAN MTD at 9 (quoting Uhm, 620 F.3d at 1143).  SCAN contends it does not matter that plaintiff's injuries cannot be remedied by a retroactive payment of benefits because the Ninth Circuit has indicated that the "type of remedy sought is not strongly probative of whether a claim" arises under Medicare.  Id. at 11 (quoting Kaiser, 347 F.3d at 1112).  Plaintiff, on the other hand, argues that his claims are of the type presented in Ardary and McCall in that they are common law claims seeking tort damages for the physical and mental harm that he suffered as a result of delays in providing him with appropriate treatment and from being forced to receive substandard care at two SNFs.  SCAN Opp'n at 12.  SCAN counters that plaintiff's reliance on Ardary and McCall is misplaced because the alleged wrongdoing in those cases was only incidentally related to the denial of Medicare benefits.  SCAN Reply at 4.

Having reviewed the complaint in light of the foregoing authorities, the Court finds that plaintiff's claims against SCAN do not, at bottom, seek Medicare benefits or reimbursement for SCAN's failure to provide those benefits.  Cf. Ringer, 466 U.S. at 614 (plaintiffs sought reimbursement for surgeries already performed or prospective approval for the procedure); Uhm, 620 F.3d at 1143–44 (plaintiffs paid for medications out-of-

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
|----------|--------------------------|------|------------------|
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

pocket and were at bottom seeking reimbursement).  Rather, plaintiff's claims seek consequential damages for his physical and mental suffering caused by SCAN's failure to provide adequate medical care.  As in <u>Ardary</u>, plaintiff's claims may be predicated on SCAN's failure to authorize acute rehabilitative services, but plaintiff is not seeking to recover Medicare benefits, and his injuries cannot be remedied by a retroactive payment of benefits.[2]  <u>See</u> <u>Ardary</u>, 98 F.3d at 500–01.  The Court also finds plaintiff's claims comparable to those asserted by the plaintiffs in <u>McCall</u> that were based on the defendant's failure to approve a specialist referral.  Thus, plaintiff's claims are comparable to those asserted in <u>Ardary</u> and <u>McCall</u> in that they are not "inextricably intertwined" with a claim for benefits, do not "arise under" the Act, and therefore plaintiff is not required to exhaust Medicare's administrative review procedures before seeking judicial review.

## 2.     Preemption

As enacted in 1997, Medicare Part C included a two-part express preemption clause.  The first part provided that "[t]he standards established" by regulation "shall supersede any State law or regulation . . .  with respect to [MA] plans which are offered by [MA] organizations under this part to the extent such law or regulation is inconsistent

---

[2] On January 9, 2017, SCAN requested that the Court take judicial notice of <u>Shakespeare v. SCAN Health Plan</u>, No. 3:17-CV-568-BTM (MDDx), 2018 WL 340422 (S.D. Cal. Jan. 8, 2018).  In that case, the plaintiff brought claims for breach of contract, negligence, willful misconduct, and bad faith based on SCAN's denial of her request to receive a Watchman Device.  <u>Id.</u> at *1.  The court granted SCAN's motion to dismiss, reasoning that the plaintiff's claims were "inextricably intertwined" with a claim for benefits and finding that <u>Ardary</u> was distinguishable because in that case "the question of 'whether the provider both improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary' could be answered largely independent of the underlying Medicare law because defendant made an explicit representation to the beneficiary that an emergency transfer would immediately be authorized." <u>Id.</u> at *4 (quoting <u>Ardary</u>, 98 F.3d at 497).  The Court disagrees with this narrow reading of <u>Ardary</u>.  The Ninth Circuit reasoned that the plaintiff's claims did not "arise under" the Act not because the issue of misrepresentation could be answered independently of Medicare law, but rather because plaintiffs were "at bottom not seeking to recover benefits" and their injuries could not be "remedied by the retroactive authorization or payment." <u>See</u> <u>Ardary</u>, 98 F.3d at 499–501.

CIVIL MINUTES – GENERAL            'O'

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
|----------|--------------------------|------|------------------|
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

with such standards." 42 U.S.C. § 1395w–26(b)(3)(A) (2000). The second part enumerated four categories of superseded state standards, including requirements relating to marketing materials. Id. § 1395w–26(b)(3)(B)(ii), (iv) (2000). In 2003, Congress enacted the Medicare Prescription Drug, Improvement and Modernization Act of 2003 ("MMA"), Pub. L. No. 108–173, 117 Stat. 2066. In addition to creating Part D, the MMA also replaced Part C's preemption clause with the following language:

> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w–26(b)(3). In interpreting this provision, CMS indicated that "all State standards, including those established through case law, are preempted to the extent that they specifically would regulate MA plans, with exceptions of State licensing and solvency laws." Medicare Program; Establishment of the Medicare Advantage Program, 70 Fed. Reg. 4588, 4665 (Jan. 28, 2005). However, CMS noted that "[o]ther State health and safety standards, or generally applicable standards, that do not involve regulation of an MA plan are not preepmted." Id.

Relying on Uhm, SCAN argues that plaintiff's claims are expressly preempted because they seek to apply "principles of California law" that are "inconsistent" with Medicare standards. SCAN MTD at 12–13. In Uhm, the Ninth Circuit considered whether the plaintiffs' state statutory consumer protection and common law fraud claims were preempted. 620 F.3d at 1148. First, the court held that the statutory consumer protection claim was "inconsistent with the standards established under the Act" and therefore was "expressly preempted." Id. at 1153. The court pointed to CMS's extensive regulation of marketing materials and activities as well as the inconsistency between those regulations and vague standards under the consumer protection statute. Id. at 1152. The court reasoned that allowing consumer protection claims for "deceptive" practices could result in liability based on representations in marketing materials that CMS previously had approved, which could potentially undermine CMS standards. Id. Second, the court concluded that Congress intended the MMA preemption provision "to preempt at least some common law claims." Id. at 1153–56. Thus, plaintiffs' common law fraud claims, to the extent they were based on the defendant's marketing activities, were also expressly preempted because they would require the court to determine that the material contained misrepresentations, even though CMS had already necessarily

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
|----------|--------------------------|------|-------------------|
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

determined that the materials were not misleading when it allowed the defendant to use them. Id. at 1157.

Plaintiff, on the other hand, relies on Cotton v. StarCare Med. Grp., Inc., 183 Cal.App.4th 437 (2010). In that case, a Medicare beneficiary's survivors sued his HMO and medical service providers for wrongful death, negligence, breach of fiduciary duty, fraud, and bad faith. Id. at 447. The plaintiffs alleged that the beneficiary broke his leg in a fall, was treated at a hospital, and was later moved to a rehabilitation facility where he received substandard care. Id. The plaintiffs claimed that a financial dispute between the HMO and its providers delayed the beneficiary's care, resulting in irreversible injury and his eventual death. Id. First, the court found that plaintiff's claims were not expressly preempted, holding that the MMA's preemption provision was limited to positive state enactments and did not apply to common law claims. Id. at 450. Second, the court held that the plaintiffs' claims were not impliedly preempted because the claims were based on "generally applicable" duties that did not conflict with federal standards adopted by CMS. Id. at 455–56. The court noted that CMS's own interpretation of the MMA preemption clause concluded that it was not intended to reach "generally applicable state contract and tort law actions." Id. at 453.

SCAN argues that plaintiff's reliance on Cotton is misplaced because its narrow interpretation of the MMA preemption clause is at odds with the Ninth Circuit's conclusion in Uhm that the provision expressly preempts "at least some common law claims." Uhm, 620 F.3d at 1155; see also Roberts v. United Healthcare Services, Inc., 2 Cal.App.5th 132 (2016) (disagreeing with Cotton and following Uhm on this point and holding that the MMA expressly preempted a MA plan enrollee's statutory and common law claims where plaintiff alleged the plan's marketing materials misled him about the availability of in-network urgent care centers). These decisions "appear to rely on slightly different preemption analyses and are in tension. But the tension may be more apparent than real" because Uhm and Roberts "adopted a broad interpretation of the MMA's express preemption provision and therefore did not have to reach the issue of implied preemption," whereas Cotton's narrower interpretation required the court to "consider and apply implied preemption principles." Crosky et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2016) ¶ 6:1292.6. Accordingly, the Court agrees with plaintiff that the disagreement between Uhm and Cotton regarding whether the MMA extends to some common law claims "does not render the preemption analysis in Cotton defective or inapplicable." SCAN Opp'n at 16.

**CIVIL MINUTES – GENERAL**                                **'O'**

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
|---|---|---|---|
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

Nor does the Court find <u>Uhm</u> controlling with respect to plaintiff's common law claims in this case. In <u>Uhm</u>, the Ninth Circuit concluded that "[w]ere a state court to determine that [defendant]'s marketing materials constituted misrepresentations resulting in fraud or fraud in the inducement, it would directly undermine CMS's prior determination that those materials were not misleading." 620 F.3d at 1157. Thus, because CMS had already approved the defendant's marketing materials based on detailed regulations, a finding of fraud by a state court would "undermine CMS's ability to create its own standards for what constitutes 'misleading' information." <u>Id.</u> Here, on the other hand, SCAN does not point to any prior determination by CMS pursuant to federal standards that would be undermined by adjudicating plaintiff's claims. SCAN argues that plaintiff's claims "implicate Medicare benefits standards for inpatient rehabilitation services, guidelines on credentialing and approval of SNFs, and Medicare appeals and grievance procedures." SCAN Reply at 9. However, plaintiff's claims are not inconsistent with those federal standards; rather, plaintiff seeks damages for the physical and mental harm he suffered as a result of SCAN's alleged failure to deliver medical services in accordance with the applicable federal standards. The Court therefore finds that plaintiff's claims are not preempted by 42 U.S.C. § 1395w–26(b)(3).

Accordingly, the Courts concludes that plaintiff's claims are not subject to Medicare's administrative exhaustion requirement, nor are his claims preempted by 42 U.S.C. § 1395w–26(b)(3). SCAN's motion to dismiss is therefore **DENIED**.

## C.    REGAL AND LAKESIDE'S MOTION TO DISMISS

Defendants Regal and Lakeside (the "Medical Group"), the two IPAs under contract with SCAN to deliver plaintiff's Medicare benefits, move to dismiss plaintiff's claims for financial elder abuse, negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress. The Medical Group seeks dismissal on three grounds. First, the Medical Group asserts the same exhaustion and preemption arguments raised by SCAN. R/L MTD at 4–9. For the reasons articulated in the previous section, the Court **DENIES** the Medical Group's motion to dismiss on exhaustion and preemption grounds.

Second, the Medical Group argues that plaintiff fails to state a claim for financial elder abuse and cannot state a claim for neglect pursuant to the California Elder Abuse and Dependent Adult Civil Protection Act ("Elder Abuse Act"), Cal. Welf. & Inst. Code §§ 15600 <u>et seq.</u> R/L MTD at 9–14. The California Legislature enacted the Elder Abuse

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL        'O'

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
|----------|-------------------------|------|------------------|
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

Act "to protect elders by providing enhanced remedies which encourage private, civil enforcement of laws against elder abuse and neglect." Negrete v. Fid. & Guar. Life Ins. Co., 444 F.Supp.2d 998, 1001 (C.D. Cal. 2006). These remedies include reasonable attorney's fees and costs. Cal. Welf. & Inst. Code § 15657.5. The Act defines "abuse" as either "[p]hysical abuse, neglect, financial abuse, abandonment, isolation, abduction, or other treatment with resulting physical harm or pain or mental suffering," or "[t]he deprivation by a care custodian of goods or services that are necessary to avoid physical harm or mental suffering." Id. § 15610.07. It further defines "neglect" to include "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." Id. § 15610.57. Financial elder abuse occurs when a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud" or through "undue influence." Id. § 15610.30. To recover enhanced remedies, a plaintiff must prove "by clear and convincing evidence that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of th[e] abuse." Id. § 15657.5(b).

The Medical Group argues that plaintiff fails to state a claim for financial elder abuse because the complaint does not allege that the entities took, secreted, appropriated, obtained, or retained plaintiff's property for a wrongful use or with the intent to defraud him. R/L MTD at 10. Id. at 10–14. Plaintiff concedes this argument and does not oppose the portion of the motion seeking dismissal of his financial elder abuse claim against the Medical Group. R/L Opp'n at 1–2. Accordingly, the Court **GRANTS** the motion with respect to plaintiff's financial elder abuse claim.

Third, the Medical Group argues that plaintiff fails to plead sufficient factual allegations to support his prayer for punitive damages. R/L MTD at 14. Specifically, the Medical Group argues that plaintiff is not entitled to recover punitive damages under Cal. Civ. Code § 3294(a) because he fails "to allege anything more than mere conclusory allegations of oppression, fraud or malice." The Medical Group explains that under California law, "mere conclusory allegations are insufficient," rather plaintiff must plead "the facts and circumstances . . . that set out clearly, concisely, and with sufficient particularity" the alleged conduct justifying an award of punitive damages. R/L MTD at 14 (quoting Lehto v. Underground Constr. Co., 73 Cal.App.3d 933, 944 (1977)). In addition, the Medical Group argues that the complaint contains insufficient allegations to bring a punitive damages claim based on corporate liability under Cal. Civ. Code § 3294(b) because plaintiff does not allege that the corporations' officers or agents ratified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

or authorized the actions of their employees which form the basis for plaintiff's claims. R/L MTD at 14.

Although federal courts apply California substantive law to claims for punitive damages under Cal. Civ. Code § 3294, the sufficiency of plaintiff's pleading is governed by the Federal Rules of Civil Procedure and federal law interpreting those rules. See Rees v. PNC Bank, N.A., 308 F.R.D. 266, 273 (N.D. Cal. 2015). "California's heightened pleading requirements for punitive damages conflict with, and are overruled in federal court by, Federal Rules of Civil Procedure 8 and 9, the rules governing federal pleading standards." Alejandro v. ST Micro Elecs., Inc., 129 F. Supp. 3d 898, 917–18 (N.D. Cal. 2015) (internal citation omitted). However, the Medical Group indicates that there is a split of authority among district courts in this Circuit as to whether conclusory allegations of malice are sufficient under the Federal Rules or whether the Twombly and Iqbal pleading standard applies to requests for punitive damages. R/L Reply at 11–12; compare Rees, 308 F.R.D. at 273 ("[I]n federal court, a plaintiff may include a 'short and plain' prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent.") with Kelley v. Corr. Corp. of Am., 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010) (rejecting conclusory allegations of malice, fraud, or oppression as not reflecting new pleading regime under Twombly and Iqbal).

The Ninth Circuit has not extended the Twombly and Iqbal standard to punitive damages allegations. The Court therefore continues to follow the longstanding rule that plaintiffs "need not plead 'any particularity in connection with an averment of intent, knowledge or condition of the mind.' " Rees, 308 F.R.D. at 273 (quoting In re GlenFed Sec. Litig., 42 F.3d 1541, 1547 (9th Cir. 1994) (en banc)); see also Fed. Rule. Civ. P. 9(b) ("malice, intent, knowledge, and other conditions of the mind may be alleged generally"). Accordingly, the Court finds that plaintiff's general allegations of "malice, oppression, or fraud" are sufficient to satisfy federal pleading requirements. In addition, the Court finds that plaintiff's allegations regarding ratification or authorization by defendant's managing agents and other corporate officers to be sufficient at this stage to support his request for punitive damages under Cal. Civ. Code § 3294(b). See Robinson v. Managed Accounts Receivables Corp., 654 F.Supp.2d 1051, 1066 n.13 (C.D. Cal. 2009) (construing the complaint in the light most favorable to plaintiff, the court could assume that the conduct of defendant's employee was authorized by his superiors). The Court therefore **DENIES** the Medical Group's motion to dismiss plaintiff's prayer for punitive damages.

| | CIVIL MINUTES – GENERAL | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

According, the Court **GRANTS** Regal and Lakeside's motion to dismiss plaintiff's financial elder abuse claim as asserted against these defendants. The motion is otherwise **DENIED**.

### D.     ROYAL PALM'S MOTION TO DISMISS

Royal Palms, one of two SNFs where plaintiff allegedly received substandard care, moves to dismiss plaintiff's claims for financial elder abuse and professional negligence in addition to plaintiff's prayer for punitive damages pursuant to Rule 12(b)(6). First, Royal Palms argues that plaintiff fails to state a claim for financial elder abuse in violation of Cal. Welf. & Inst. Code § 15610.30 because there is no allegation of taking, secreting, appropriating, or obtaining plaintiff's property. RP MTD at 2–3. Second, Royal Palms contends that the prayer for punitive damages is insufficient because there are no allegations in the complaint that any conduct by Royal Palms' employees was ratified or authorized by a director or managing agent. Id. at 6–7. Plaintiff concedes these arguments and withdraws his claims for financial elder abuse and punitive damages against Royal Palms. RP Opp'n at 2.

Third, Royal Palms argues that plaintiff's claim for professional negligence against the SNF is not viable under the Twombly and Iqbal pleading standard because he has not alleged that he suffered any physical harm during his stay at the facility. RP MTD at 4–5. Plaintiff contends that his allegations against Royal Palms are sufficient to state a claim for negligence because, under a California law, a direct victim of negligent conduct may recover for serious emotional distress, even in the absence of any physical injury. RP Opp'n at 6–7; see Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc., 48 Cal.3d 583, 590 (1989) ("Damages for severe emotional distress . . . are recoverable in a negligence action when they result from the breach of a duty owed the plaintiff"); see also CACI 1620 (serious emotional distress includes "suffering, anguish, fright, horror, nervousness, grief, anxiety, worry, shock, humiliation, and shame" with which an "ordinary, reasonable person would be unable to cope")). In reply, Royal Palms notes that the California Supreme court has set a "high bar" for plaintiffs to prove severe emotional distress. RP Reply at 2; see Hughes v. Pair, 46 Cal. 4th 1035, 1051 (2009) ("Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable person in civilized society should be expected to endure it.") (quotation marks and citation omitted).

| CIVIL MINUTES – GENERAL | | | 'O' |
|---|---|---|---|
| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

The parties dispute whether the facts alleged in the complaint are sufficient to demonstrate that plaintiff suffered severe emotional distress. Plaintiff alleges that he was transported to Royal Palms from Good Samaritan Hospital at approximately 5:00 p.m. on February 9, 2017. Compl. ¶ 38. When his family arrived at the facility, there was no hospital or administrative staff in the lobby to assist them in locating plaintiff. Id. ¶ 39. They eventually found him in a "dark, run-down, dreary and dirty room" infested with insects. Id. ¶ 40. Although plaintiff was a fall risk, he had been placed on a bed with no side rails to prevent him from falling if he became disoriented or attempted to stand up. Id. He was lying on a "hard bed with only a hospital gown and a thin sheet to shield him from the cold." Id. ¶ 45. Plaintiff was not provided with any food, beverages, or medication. Id. ¶ 49. Due to the lack of care at Royal Palms, plaintiff's family transported him home at approximately 11:45 p.m. Id. ¶ 50. During plaintiff's stay at the second facility, York, he "would often cry and was very fearful of his family leaving him at 'two bad places.'" Id. ¶ 67. He referred to Royal Palms and York as "cold dark holes where he was mistreated by staff." Id.

Royal Palms contends these allegations are "simply insufficient" because plaintiff was at the facility for "mere hours" and fails to "plead specific facts showing that the distress was of such substantial or enduring quality that no reasonable person in civilized society should be expected to endure it." RP Reply at 3. The Court disagrees. Construing the complaint in the light most favorable to plaintiff as the non-moving party, the Court finds that his allegations are sufficient to state a claim for negligence against Royal Palms. Although plaintiff's stay at Royal Palms was brief, the complaint clearly alleges that his complete lack of care at the facility was traumatic and caused him severe emotional distress. At the pleading stage, the Court cannot say that plaintiff's emotional distress was insufficiently severe to support his negligence claim against Royal Palms as a matter of law.

Accordingly, the Court **GRANTS** Royal Palm's motion to dismiss plaintiff's financial elder abuse claim and prayer for punitive damages as asserted against this defendant. The motion is otherwise **DENIED**.

### E.     YORK'S MOTION TO DISMISS

York, the second SNF where plaintiff allegedly received substandard care, moves to dismiss plaintiff's financial elder abuse and punitive damages claims pursuant to Rule 12(b)(6). York does not seek dismissal of plaintiff's claim for professional negligence.

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
|----------|--------------------------|------|------------------|
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

First, with regard to punitive damages, York raises the same arguments asserted by the Medical Group. <u>See</u> York MTD at 9–11. For the same reasons the Court articulated in denying the Medical Group's motion, the Court likewise **DENIES** York's motion to dismiss plaintiff's prayer for punitive damages.

Second, York argues that plaintiff fails to state a claim for financial elder abuse because there is no allegation in the complaint that York secreted, appropriated, obtained, or retained any of the plaintiff's property. York MTD at 6 (citing Cal. Welf. & Inst. Code § 15610.30). York further argues that to the extent plaintiff alleges "neglect" in violation of the Elder Abuse Act, his claim should be dismissed because plaintiff fails to allege "recklessness, oppression, fraud, or malice in the commission" of the alleged elder abuse. York MTD at 6 (citing Cal. Welf. & Inst. Code, § 15657). Plaintiff indicates that his elder abuse claim against York is a claim for neglect, not financial elder abuse. York Opp'n at 7. In addition, plaintiff argues that the factual allegations in the complaint are sufficient to state a claim for elder abuse based on neglect because the Elder Abuse Act "does not require more than proof of negligent conduct." <u>Id.</u> at 9.

As previously discussed, the Elder Abuse Act defines "neglect" to include "[t]he negligent failure of any person having the care or custody of an elder or a dependent adult to exercise that degree of care that a reasonable person in a like position would exercise." Cal. Welf. & Inst. Code § 15610.57. However, in order to recover enhanced remedies under the Act, the plaintiff must prove "by clear and convincing evidence that . . . the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission" of the neglect. <u>Id.</u> § 15657; <u>see also</u> <u>Covenant Care, Inc. v. Superior Court</u>, 32 Cal.4th 771, 789 (2004) ("In order to obtain the Act's heightened remedies, a plaintiff must allege conduct essentially equivalent to conduct that would support recovery of punitive damages."). Accordingly, York's argument "relates only to the heightened remedies available" under Cal. Welf. & Inst. Code § 15657.5(b), "not to Plaintiff's ability to state a claim under the Elder Abuse Act." <u>Davis v. RiverSource Life Ins. Co.</u>, 240 F. Supp. 3d 1011, 1020 (N.D. Cal. 2017). In addition, under federal notice pleading standards, "[m]alice, intent, knowledge, and all other conditions of a person's mind may be alleged generally," Fed. Rule. Civ. P. 9(b); plaintiff therefore adequately alleges that defendants acted with "malice, oppression, or fraud." Ultimately, whether plaintiff has satisfied the Elder Abuse Act's heightened evidentiary standard for enhanced remedies is a fact-dependent inquiry not appropriately decided on a Rule 12(b)(6) motion. York's motion to dismiss plaintiff's elder abuse claim is therefore **DENIED.**

| CIVIL MINUTES – GENERAL | | 'O' | |
|---|---|---|---|
| Case No. | 2:17-cv-06011-CAS (JCx) | Date | January 23, 2017 |
| Title | BERNARD INCHAUSPE v. SCAN HEALTH PLAN, ET AL. | | |

## V.  CONCLUSION

In accordance with the foregoing:

The Court **DENIES** SCAN's motion to dismiss in its entirety.

The Court **GRANTS**, in part, and **DENIES**, in part, Regal and Lakeside's motion to dismiss.  Specifically, the Court **GRANTS** the motion with respect to plaintiff's third claim for financial elder abuse.  The motion is otherwise **DENIED**.

The Court **GRANTS**, in part, and **DENIES**, in part, Royal Palm's motion to dismiss.  Specifically, the Court **GRANTS** the motion with respect to plaintiff's third claim for financial elder abuse and plaintiff's prayer for punitive damages.  The motion is otherwise **DENIED**.

The Court **DENIES** York's motion to dismiss in its entirety.

As a result, the Court **ORDERS** defendants to answer plaintiff's complaint within **fourteen (14) days** of the date of this order.

**IT IS SO ORDERED.**

|  | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |